UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

RICK RUDY BENAVIDEZ,  Case No. 22-10285-t7

    Debtor.

ILENE J. LASHINSKY, United States Trustee,

    Plaintiff,

v.  Adv. No. 22-01015-t

RICK RUDY BENAVIDEZ,

    Defendant.

## OPINION

This matter is before the Court on the United States Trustee's ("UST's") motion for entry of default judgment against Defendant Rick Rudy Benavidez. The UST asserts that although Defendant filed certain documents in this adversary proceeding, he did not answer the complaint and had no intent to defend. The Court agrees. The Court will enter Defendant's default and a separate default judgment.

A.    Facts.[1]

For the purpose of ruling on the motion for default judgment, the Court finds:[2]

Defendant Rick Rudy Benavidez filed this chapter 7 bankruptcy case on April 8, 2022. His petition discloses assets of between $100-$500 million and liabilities of $10-$50 million. His

---

[1] The Court takes judicial notice of the docket in this case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

[2] Some of the Court's findings are in the discussion section of the opinion. They are incorporated by this reference.

schedule B discloses a "certificates of birth document 4210 social security trust 9637" valued at $100 million and a "Copyright of trade-name/trademark RICK RUDY BENAVIDEZ TRUST including any and all derivatives and variations in the spelling" which he valued at $100 million. Defendant disclosed an "Investment bond us treasury # RE 871 993 880 US," which he valued at $100 million. On his statement of financial affairs ("SOFA"), Defendant disclosed that on June 29, 2021, the United States repossessed "Birth Certificate no. 1974014210" which he valued at $100 million. Defendant attached 87 pages of documents to his schedules and SOFA, all of which (except for a copy of the criminal indictment filed against him) are nonsensical.

On November 30, 2022, the chapter 7 trustee appointed in the case declared it a "no asset" case, i.e., there were no assets available to pay creditors.

The UST filed the complaint commencing this adversary proceeding on July 1, 2022. By the complaint, the UST seeks denial of Defendant Rick Rudy Benavidez's discharge under § 727(a)(3), (4), and (5) of the Bankruptcy Code.[3] The UST alleges, inter alia:

- Defendant attempted to pay the bankruptcy court filing fee with a false and fraudulent instrument;
- Defendant failed to disclose documents evidencing certain "GSA Bonds" referred to in his bankruptcy schedules when requested by the Chapter 7 Trustee at the § 341 meeting;
- In his petition, Defendant falsely indicated his estimated worth of assets is between $100 million and $500 million, and that his estimate of liabilities is between $10 million and $50 million;
- Defendant falsely listed an asset on his schedules, an "investment bond us treasury # RE 871 993 880 US" valued at $100,000,000;
- Defendant falsely and fraudulently indicated the United States is a creditor and its claim is secured by "BIRTH CERTIFICATE NO. 4210" which he alleged had a value of $100,000,000"; and
- Defendant had child support arrearages that he failed to disclose.

---

[3] Unless otherwise indicated, all statutory references are to 11 U.S.C.

The complaint contains many other allegations that Defendant made outlandish and obviously false disclosures and averments in his petition, schedules, and SOFA, in complete disregard of the truth or the law against perjury.

The Court has jurisdiction over the proceeding under 28 U.S.C. §§ 157 and 1334.

On July 5, 2022, the Clerk of Court issued a summons to Defendant. The summons required Defendant to answer the complaint within thirty days of July 5, 2022, i.e., on or before August 4, 2022. The summons also notified Defendant that a scheduling conference would be held on August 16, 2022, at 9:45 a.m. at the U.S. Courthouse, 333 Lomas Blvd. NW, 5th Floor, Albuquerque, NM 87102 in the Brazos Courtroom.

On July 8, 2022, the UST served the complaint and summons on Defendant by first-class United States mail, postage pre-paid. Under Fed. R. Bankr. P. ("Bankruptcy Rule") 7004, service was proper.

On July 14, 2022, Defendant filed a 9-page document entitled *Notary Presentment*. The first portion is signed by Maithem J. Sarraj, allegedly a notary public in Gwinnett County, Georgia. It is addressed to the acting director of the UST's office in Washington, D.C. The balance of the document is an "Affidavit of Truth" signed by "rick-rudy; Benavidez, Principal." The document does not respond to the complaint, is largely nonsensical, and is not a good faith attempt to answer the complaint or otherwise plead.

On August 2, 2022, Defendant filed a 4-page document entitled *Notice of Motion and Ex-Parte Emergency Motion to Stay Any Further Process or Proceedings Pending Removal of*

*Disabilities of Minority and Restoration of All Rights* (the "Notice of Motion"). The Notice of Motion also was filed in the main case.[4] The document provides in part:

**EX PARTE EMERGENCY MOTION TO STAY ANY FURTHER PROCESS OR PROCEEDINGS PENDING REMOVAL OF DISABILITIES OF MINORITY AND RESTORATION OF ALL RIGHTS**

> In the interest of equity, justice and judicial jurisprudence, Petitioner hereby motions this Court for a temporary ex-parte emergency stay of all further process and proceedings on this matter until the removal of disabilities of minority, with regards to the style, status and condition of the name RICK RUDY BENAVIDEZ, representative of a minor account, has been changed to Rick Rudy Benavidez, and in doing so, removing those now known disabilities, so that he may bring or defend any new or pending suit in law or equity within this Court's jurisdiction, or any other Court.
> One such disability is that of "Latent Ambiguity", in which such disabilities equate to a condition of corporate status. Due to this matter of latent ambiguity, all preceding legal instruments filed with the Court regarding this matter, are essentially VOID on their face as a violation of the Vagueness doctrine. This is but one example of such condition of an "implied" status and condition after attaining the Age of Majority.

The Notice of Motion goes on in a similar vein for four pages. On August 12, 2022, Defendant filed an amended but very similar and equally incomprehensible Notice of Motion in the main case and this proceeding. Like the Notary Presentment, the Notice of Motion is not a good faith attempt to plead or otherwise defend.

On August 16, 2022, the Court conducted the initial scheduling conference. The attorney for the UST appeared. Defendant did not appear, despite audible calls in the hallway at 9:45 a.m., 9:50 a.m., and 9:55 a.m., and the Court's final check of the courtroom at 9:57 a.m.

At the time there was a pending criminal case against Defendant, styled *U.S.A. v. Benavidez,* Case No. 19-CR-00592-SWS-KHR. Defendant entered a guilty plea in the criminal

---

[4] In the main case, on August 4, 2022, the Court entered an order denying the Notice of Motion as incomprehensible.

case, pleading guilty to conspiracy, bank fraud, and filing false federal income tax returns. The plea agreement included the following:

> I specifically admit the following facts related to the charges against me, and declare under penalty of perjury that all of these facts are true and correct:
>
> From on or about April 18, 2013 to on or about May 31, 2013, I conspired with Damian Maron and Ramon Saenz to submit fraudulent documentation including fraudulent pay stubs, to financial institutions in order to receive automobile loans. Neither Saenz, Maron, nor I had any intention of using the proceeds of these loans to finance the purchase of any automobile. Maron and I convinced Saenz to apply for auto loans from Sandia Laboratory Federal Credit Union and New Mexico Educators Federal Credit Union using the title for the same car, a 2007 Mercedes S Class, for both loans. Both credit unions were insured by the National Credit Union Administration through the National Credit Union Share Insurance Fund at the time the loans were applied for and approved, meaning that both credit unions were "financial institutions" as defined in 18 U.S.C. § 20(2).
>
> On May 30, 2013, and May 31, 2013, at my and Maron's direction, Saenz went to the credit unions and submitted fraudulent pay stubs, which I provided to him, as supporting documents associated with auto loan applications. The fraudulent pay stubs I provided to Saenz overstated his income and therefore increased the likelihood that he would be approved for loans. The false pay stubs supported Saenz's representations that he earned an annual income of $85,000 when in reality he earned far less----only roughly $8,000 in all of 2013. I knew Saenz did not actually earn the income represented on the fraudulent pay stubs and I knew that the pay stubs were false. The credit unions, which are located in Bernalillo County, both approved loans to Saenz based on the false income documentation.
>
> The car Saenz purported to be financing the purchase of via the auto loans was not actually for sale and neither Saenz, Maron, nor I actually purchased the car or ever had any intention of purchasing it. Instead, the money was disbursed to "Automotive Express, Inc.", a fictitious dealership, and then distributed to Saenz, Maron, and me. Saenz, Maron, and I each kept some of the money from the loans and used the money for our own personal benefit. Saenz eventually defaulted on the loans.
>
> The above-described scheme to defraud Sandia Laboratory Federal Credit Union and New Mexico Educators Federal Credit Union was part of a larger conspiracy using multiple "straw applicants" to obtain similar auto loan based on false or fraudulent information. The total amount of loans disbursed by financial institutions as part of this scheme was $359,662.97.
>
> I also took part in an additional loan scheme, involving Willie Lee Edwards and other individuals, that is not charged in the indictment or information referenced in

this document. The total loan amount applied for as part of this separate scheme was $1,154,493.42, of which $999,993.42 was disbursed by financial institutions.

After being charged with conspiracy and bank fraud in relation to the first of the above-described schemes, I submitted a false document to the Internal Revenue Service ("IRS") purporting to designate the assigned U.S. District Court Judge, William P. Johnson, as my fiduciary. I submitted this document to the IRS on or about December 10, 2019. I knew that the fiduciary designation was false because Judge Johnson did not agree to it and he is not, and never has been, my legal fiduciary.

On August 24, 2022, United States District Judge Scott W. Skavdahl sentenced Defendant to 63 months in federal prison.

The UST filed the motion for default judgment on March 29, 2023, along with an Affidavit of Non-Military Service.

The UST served the motion on Defendant at numerous addresses, including his record address in this bankruptcy case, his prison address, and the address of the prison medical center. Defendant was properly served with the motion. Defendant never responded to it.[5]

On March 13, 2023, the Court Clerk's office served on the parties a notice that the Court would hold a status conference in the adversary proceeding on April 3, 2023, at 9:30 a.m. Defendant was served by mail at the record address he designated when he filed this bankruptcy case. Service of the notice was proper.

The Court held the status conference at the date, time, and location indicated in the notice. The UST attorney attended the status conference; Defendant did not. At the status conference, the UST's counsel brought up the pending motion for default judgment and argued that it was appropriate to grant the motion without further notice or hearing.

---

[5] Under Bankruptcy Rule 7055 and Rule 55(b)(2), Defendant had seven days to file a response before a default judgment could be entered against him. Under NM LBR 7007-1, Defendant had 21 days to respond to the motion. Defendant is well past both deadlines.

On May 3, 2023, the Federal Bureau of Prisons filed a Notice in the criminal case that on May 1, 2023, Defendant died in custody.

B.     <u>Entering a Default</u>.

Fed. R. Civ. P. ("Rule") 55(a)[6] provides:

> **(a) Entering a Default.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

The Court construes the UST's motion for default judgment as both a request that the Court enter Defendant's default and a request for a default judgment.

Courts in this district have held that they, as well as the clerk, may enter a party's default. *See, e.g., Nevada General Insurance Co. v. Anaya,* 326 F.R.D. 685, 690–91 (D.N.M. 2018) (citing *Mickalis Pawn Shop*, the court held that it had the power to enter a default under Rule 55(a)); *see also Tratt Industries, LLC v. Patterson,* 2019 WL 4919098, at *4 (D.N.M.) ("although Rule 55(a) contemplates that entry of default is a ministerial step to be performed by the clerk of court, a district judge also possesses the inherent power to enter a default").

In addition to a failure to plead, a default must be entered if the defendant fails to "otherwise defend." Most courts have interpreted "otherwise defend" to allow entry of default for persistent discovery misbehavior, failure to appear, or abandonment of active defense. In *Anaya*, for example, Judge Armijo opined:

> Examination of the relevant authorities reveals, however, that the relevant question is whether a defendant has indicated an intent to defend against the complaint. . . *see* Wright & Miller, *supra* [10A Wright & Miller, Fed. Prac. & Proc. Civ. §2682 (4th ed.)] (stating that "[a] defendant who has participated throughout the pretrial process and has filed a responsive pleading, *placing the case at issue*, has not conceded liability" and that "[t]he mere appearance by a defending party, without more, will not prevent the entry of a default for failure to plead or otherwise defend"

---

[6] This rule is made applicable by Bankruptcy Rule 7055.

unless the "defendant appears *and indicates a desire to contest the action*" (emphasis added)).

326 F.R.D. at 692 (Wright & Miller citation added); *see also Tirado v. Express Home Solutions L.L.C.*, 2023 WL 34472, at *2 (D.D.C.) (citing *Anaya* with approval); *World Fuel Services, Inc. v. Bales*, 2020 WL 3367278, at *2 (W.D. Okla.) (same); *see generally Hoxworth v. Blinder, Robinson & Co., Inc.,* 980 F.2d 912, 917 (3d Cir. 1992) ("by its very language, the "or otherwise defend" clause is broader than the mere failure to plead"); *City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 129 (2d Cir. 2013) "we have embraced a broad understanding of the phrase "otherwise defend"); *see generally* Gregory A. Kendall, *Defendants' Burdens Under Fed. R. Civ. P. 55: Post-Answer Defaults and Jurisdictional Waivers in City Of New York v. Mickalis Pawn Shop,* 81 U. Cin. L. Rev. 1079 (2013) (citing cases).

In 2007, Rule 55(a) was amended to strike the phrase "as provided by these rules." Some courts have held that the change was intended to permit a party to "show intent to defend" even if it did not comply with the Rules. *See, e.g., In re Clark*, 2010 WL 2639842, at *3 (W.D. Wash) (entry of default not appropriate where defendant's late answer showed an intent to defend); *Doe v. Board of Education of Jefferson County, Kentucky*, 2017 WL 11722216, at *2 (W.D. Ky.) (to the same effect, citing *Clark*); *Financial Casualty & Surety, Inc. v. Mascola*, 2012 WL 12905517, at *2 (D.N.J.) (same); *Geyer v. U.S. Van Lines*, 2013 WL 65458, at *4 (S.D.W. Va.) (same).

Here, Defendant's filings are not "pleadings" within the meaning of Rule 55(a), so entry of a default is appropriate. Furthermore, the filings demonstrate that Defendant never intended to defend. The lack of intention to defend is also evidenced by Defendant's failure to appear at the scheduling conference, failure to respond to the motion for default judgment, and failure to attend the status conference. Thus, although Defendant "appeared" in this proceeding (see the discussion below), he never intended to defend against the claim. Like his petition, schedules, and SOFA, his

-8-
Case 22-01015-t    Doc 11    Filed 05/19/23    Entered 05/19/23 10:31:00 Page 8 of 11

filings in this adversary proceeding were not made in good faith. The Court will enter Defendant's default.

C.      Entering a Default Judgment.

Rule 55(b) provides:

(b) Entering a Default Judgment
   (2) By the Court. In all other cases, the party must apply to the court for a default judgment […] If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing [….]

A party "appears" as that phrase is used in Rule 55(b)(2) by making some presentation or submission to the court. In *Sun Bank of Ocala v. Pelican Homestead and Sav. Ass'n,* 874 F.2d 274, 276 (5th Cir. 1989), the court held:

> What constitutes an "appear[ance]" under Rule 55(b)(2), thus requiring both three-days notice and the entry of judgment by the court, is not, therefore, confined to physical appearances in court or the actual filing of a document in the record. As Moore's treatise observes, "'[a]ppearance' is defined broadly ... to include a variety of informal acts on defendant's part which are responsive to plaintiff's formal action in court, and which may be regarded as sufficient to give plaintiff a clear indication of defendant's intention to contest the claim." Thus, courts have held that a letter from a defendant's counsel to plaintiff's counsel and a telephone conversation between them, in both of which the defendant's lawyer indicated an intention to defend the suit, sufficed as an appearance under Rule 55(b)(2).

874 F.2d at 276 (footnotes omitted). Filing a motion to dismiss normally constitutes an "appearance" for purposes of the rule. *Id.* at 277; *see also U.S. ex rel. Time Equipment Rental & Sales, Inc. v. Harre*, 983 F.2d 128, 130 (8th Cir. 1993) (citing *Sun Bank* with approval). Defendant, by filing the Notary Presentment and the Notice of Motion, appeared in this proceeding. Because of that, no default judgment can be entered unless Defendant has notice "at least 7 days before the hearing."

The UST filed and served the motion for default judgment on March 29, 2023. The time for Defendant to respond expired before his death on May 1, 2023, whether the deadline was 7 days (per Rule 55(b)(2))[7] or 21 days (New Mexico Local Bankruptcy Rule 7007-1).[8]

"Upon a motion for default judgment, a district court accepts as true all well-pled allegations in a complaint, except those related to proving damages." *Anaya*, 326 F.R.D. at 693, citing *United States v. Craighead*, 176 F. App'x 922, 924 (10th Cir. 2006) (unpublished)); *see also United Financial Cas. Co. v. Morales*, 598 F. Supp. 3d 1167, 1172 (D.N.M. 2022) (same, citing *Anaya*). Here, the UST's complaint properly alleges the elements required to deny Defendant a discharge under 11 U.S.C. § 727(a)(4), namely that Defendant knowingly and fraudulently made false oaths on his bankruptcy petition, schedules and SOFA.

D.  <u>Defendant's Death Has No Effect on the Court's Ability to Deny the Discharge</u>.

Bankruptcy Rule 1016 provides:

> Death or incompetency of the debtor shall not abate a liquidation case under chapter 7 of the Code. In such event the estate shall be administered and the case concluded in the same manner, as far as possible, as though the death or incompetency had not occurred. . .

In *In re Waring*, 555 B.R. 754, 760-61 (Bankr. D. Colo. 2016), the bankruptcy court held:

> The first two sentences of Fed. R. Bankr. P. 1016 pertain to Chapter 7 liquidations and are fairly clear in application. The basic principle is that a Chapter 7 case should continue irrespective of the death of the debtor after the petition. This makes good sense because in the majority of Chapter 7 cases, the filing of the petition operates to create an estate consisting of "all legal and equitable interests of the debtor in property," but subject to potential exemptions. 11 U.S.C. § 541 (property of the

---

[7] The Court is not required to have an actual hearing. *See, e.g., Wright & Miller, Federal Practice and Procedure*, § 2688 ("numerous courts have determined that a hearing is not required before entering a default judgment") (citing six cases). The Court construes the rule to mean that a default judgment should not be entered for at least seven days after the motion has been filed and served on Defendant.

[8] NM LBR 7007-1 provides: 7007-1 Motion Practice in Adversary Proceedings (Except Summary Judgment Motions). All motions filed in adversary proceedings shall be served on opposing parties. Responses shall be due within 21 days after service.

estate); 11 U.S.C. § 522 (exemptions). Then, a Chapter 7 trustee is appointed. 11 U.S.C. §§ 701-703. The main job of a Chapter 7 trustee is to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of the parties in interest." 11 U.S.C. § 704. If funds are available in a Chapter 7 liquidation, then such funds must be distributed in order of statutory priority. 11 U.S.C. § 726. In this process, the debtor generally plays no active role. In fact, unless the Chapter 7 estate is solvent, a debtor typically does not even have standing to participate in matters concerning administration of the bankruptcy estate. *Cult Awareness Network, Inc. v. Martino (In re Cult Awareness Network, Inc.),* 151 F.3d 605, 607 (7th Cir. 1998); *In re Morreale,* 2015 WL 3897796, at *7-8 (Bankr. D. Colo. Jun. 22, 2015). So, it only stands to reason that the death of a Chapter 7 debtor during the pendency of a bankruptcy case will not usually impede the liquidation process.

Here, because Defendant defaulted before his death, it is possible to proceed "as though the death . . . had not occurred." Had Defendant died before he defaulted and/or before the time to respond to the UST's motion for default judgment, entry of a default judgment would not be proper. In such a scenario, case dismissal would be the likely alternative.

To be eligible for a discharge, a debtor must, at a minimum, make a good faith attempt to disclose his assets, liabilities, income, and expenses. Defendant did not clear this low hurdle. His schedules and SOFA are a bad joke. His filings in this proceeding are no better. Defendant was not entitled to a discharge when he was alive, and his estate is not entitled to a discharge now.

## Conclusion

The Court will enter Defendant's default, and also will enter a default judgment denying Defendant's discharge under § 727(a)(4).

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: May 19, 2023
Copies to: Counsel of Record